IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROZONE PRODUCTIONS, L.L.C. | § | |
| | § | |
| v. | § | A-08-CA-892 LY |
| | § | |
| LITTLE SWAMP II, INC., | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are the following motions, along with the responses and replies that are associated with each motion:

(1)   Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed December 12, 2008 (Clerk's Doc. No. 6);

(2)   Defendant's Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue, filed December 12, 2008 (Clerk's Doc. No. 7);

(3)   Defendant's Motion to Compel Arbitration and Dismiss Action, filed December 12, 2008 (Clerk's Doc. No. 8);

(4)   Plaintiff's Objections to and Motion to Strike the Affidavits of Robert Fogerty, Brian Greenbaum, and Brett Steinberg, filed December 31, 2008 (Clerk's Doc. No. 31); and

(5)   Defendant's Objections to and Motion to Strike the Declaration of David E. Rosen, filed January 12, 2009 (Clerk's Doc. No. 62).

On December 29, 2008, the District Judge referred the above to the undersigned Magistrate Judge for findings and recommendations (Clerk's Doc. No. 30). The Magistrate Judge submits this Report and Recommendation to the United States District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules

of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. PROCEDURAL BACKGROUND

On September 26, 2008, Plaintiff Rozone Productions L.L.C. ("Rozone") filed suit against Defendant Little Swamp II, Inc. ("Little Swamp") in Texas state court, alleging breach of contract and unjust enrichment. On December 9, 2008, Little Swamp removed the case to the Western District of Texas on the basis of diversity jurisdiction. Little Swamp, specially appearing, then filed a motion to dismiss the claims against it for lack of personal jurisdiction.

## II. GENERAL BACKGROUND

Little Swamp is a California corporation with its principal place of business in Los Angeles County, California. Little Swamp was formed for the purposes of furnishing live performing services of Los Angeles-based recording artist John Fogerty. Rozone is a Texas limited liability company with its principal place of business in Austin, Texas. Rozone's business consists of producing and promoting live concert events. During the summer of 2008, Rozone produced and promoted a three-day live concert event held in Sturgis, South Dakota. In order to find the desired performers for the festival, Rozone contracted with Brian Knaff of Talent Buyers Network, a talent buyer based in Las Vegas, Nevada.

On June 9, 2008, Rozone, through Knaff, contacted the Los Angeles, California office of Creative Artists Agency ("CAA"), Fogerty's Los Angeles-based booking agency, to book the live performance of Fogerty at the festival. CAA then advised Little Swamp that it had been contacted by Talent Buyers Network in Las Vegas, acting as a "buyer's agent" for Rozone, with an offer to present Fogerty live in concert at the festival on August 5, 2008. Little Swamp's agents at CAA,

Brian Greenbaum and Brett Steinberg, eventually prepared a written agreement and negotiated its terms with Knaff (who was still in Las Vegas while acting on behalf of Rozone). On June 12, 2008, Rozone's CEO, David Rosen, executed the agreement from Austin, Texas, which Knaff then forwarded from his office in Las Vegas to CAA in Los Angeles.[1] Under the terms of the agreement, Rozone was obligated to pay Little Swamp $300,000 in advance of the Sturgis show. Rozone fulfilled this obligation by wiring the payment from its account in Austin, Texas to CAA's client trust account in Los Angeles.

On August 5, 2008, the day of the Sturgis show, Fogerty and his band were in Sturgis, South Dakota, apparently ready and willing to perform. However, Fogerty's performance was cancelled that night because of, as Rozone describes it, "a storm of biblical proportions." Pl. Response, Clerk's Doc. No. 32, at 3. Rozone alleges that Little Swamp breached their contract for failing to return the $300,000 fee after Fogerty did not perform at the festival. Little Swamp, on the other hand, believes the agreement between them provided that the event could only be cancelled due to an Act of God and, in the event of inclement weather, Fogerty could elect at his discretion to cancel the show, but the $300,000 fee to Little Swamp was nevertheless non-refundable. Regardless of the merits of Rozone's claims, Little Swamp believes the current suit against it should not proceed in the Western District of Texas because of a lack of personal jurisdiction over Little Swamp.

---

[1]There is some dispute as to the validity of the agreement because it was never signed by CAA or Little Swamp. However, whether or not the agreement was signed by Little Swamp does not affect the personal jurisdiction analysis.

## III. EVIDENTIARY OBJECTIONS

As an initial matter, the Court addresses the parties' various evidentiary objections. First is Plaintiff's Motion to Strike (Clerk's Doc. No. 31), in which Rozone seeks to strike certain statements from the affidavits of Robert Fogerty, Brian Greenbaum, and Brett Steinberg. The objections to Fogerty's affidavit are overruled, as they are either without merit,[2] or object to matters on which the Court does not rely in ruling on the motion to dismiss for lack of personal jurisdiction. The objections to Greenbaum's affidavit are likewise overruled, as they too are either without merit, or object to matters on which the Court does not rely in ruling on the motion to dismiss for lack of personal jurisdiction. Finally, all objections related to Steinberg's affidavit are overruled as the matters objected to are not relied upon in ruling on the motion to dismiss for lack of personal jurisdiction. As to Defendant's Motion to Strike (Clerk's Doc. No. 62), all of Defendant's objections are overruled as the matters objected to are not material to the Court's determination on the personal jurisdiction issue.

## IV. ANALYSIS

As mentioned above, Little Swamp has moved for the Court to dismiss all claims against it on various grounds. The Court will first address the motion to dismiss for lack of personal jurisdiction. Because the Court recommends that all claims be dismissed against Little Swamp for lack of personal jurisdiction, it is not necessary to reach the alternative arguments contained in Little Swamp's motions.

---

[2] For instance, Rozone objects to many of Fogerty's statements on the grounds that they lack foundation and are not based on personal knowledge. However, Fogerty's affidavit sets forth a more than adequate foundation for his statements regarding the activities of Little Swamp. As someone who is an officer of Little Swamp and manages its day-to-day affairs, Mr. Fogerty possesses personal knowledge of the matters alleged therein.

Standard for Exercising Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the state long-arm statute permits an exercise of jurisdiction and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003)*, cert. denied*, 540 U.S. 1111 (2004); *see also* FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. *Religious Tech Ctr.*, 339 F.3d at 373.

The exercise of jurisdiction over a nonresident defendant is proper, under the Due Process Clause, when two requirements have been met: (1) the defendant has established sufficient "minimum contacts" with the forum state, and (2) exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214–15 (5th Cir. 2000). A defendant has minimum contacts with a forum if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts requirement ensures that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Supreme Court has reasoned, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King, Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotations omitted). "Jurisdiction, however, is proper where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

The minimum contacts requirement may further be subdivided into contacts that give rise to *specific* personal jurisdiction and those creating *general* personal jurisdiction. *Wilson v. Berlin*, 20 F.3d 644, 647 (5th Cir. 1994), *cert. denied*, 513 U.S. 930 (1994). A court may exercise specific jurisdiction over a defendant if the suit arises out of or is related to the defendant's purposeful contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Alpine View Co.*, 205 F.3d at 215. By contrast, if a suit is unrelated to the defendant's activities in the forum, a court may nonetheless exercise general jurisdiction over the defendant if the defendant's contacts with the forum state are substantial and "continuous and systematic." *Helicopteros*, 466 U.S. at 414–15; *Alpine View Co.*, 205 F.3d at 215. When personal jurisdiction is based on specific, rather than general jurisdiction, the plaintiff must establish personal jurisdiction over each claim asserted. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006). If the Court determines that a nonresident defendant does in fact have sufficient contacts with the forum to subject it to jurisdiction there, then the Court must consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *Wilson*, 20 F.3d at 647. The fairness of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State." *Id.*[3]

---

[3]Because Plaintiff bases its jurisdictional arguments only on a claim of specific jurisdiction, the Court will focus its attention only on that issue.

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* The Court will accept as true any uncontroverted allegations contained in the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. *Id.* However, the Court need not accept "merely conclusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In its Motion to Dismiss, Little Swamp argues that the Court does not have personal jurisdiction over it because Little Swamp has never maintained an office in Texas, hired employees in Texas, owned, leased or held a security interest in property in Texas, opened or maintained a bank account in Texas, paid or owed any taxes in Texas, or engaged in any business in Texas, other than having Fogerty come to Texas for an occasional concert while on a national tour. Furthermore, Little Swamp is incorporated in California and maintains its principal place of business in Los Angeles, where Fogerty resides. Little Swamp also argues that none of the claims asserted against it arise out of the isolated contacts it has had with Texas, but rather arose out of activities in either California or South Dakota. Thus, Little Swamp contends that it has not purposefully availed itself of the privileges of conducting business within Texas or invoked the benefits and protections of Texas law so as to warrant the exercise of personal jurisdiction over it in Texas.

<u>Has Rozone established that Little Swamp has "minimum contacts" with Texas?</u>

It is undisputed that Little Swamp has not had substantial and "continuous and systematic" contacts with Texas, so the Court does not have general jurisdiction over Little Swamp. Rather,

7

Rozone contends that the Court has specific jurisdiction over Little Swamp because the claims asserted against Little Swamp arise out of Little Swamp's Texas contacts. Therefore, the Court must determine whether the suit arises out of or is related to Little Swamp's purposeful contacts with the forum.

Rozone alleges that Little Swamp breached a contract between it and Rozone when Little Swamp failed to return the $300,000 following the cancellation of the concert in Sturgis. Little Swamp asserts that the agreement with Rozone was negotiated solely by Greenbaum and Steinberg of CAA (on behalf of Little Swamp) while they were located in California, and by Knaff (on behalf of Rozone) while he was located in Nevada. Little Swamp further alleges that neither it nor CAA had any contact with Rozone in Texas during the negotiation of the agreement, and Little Swamp never traveled to Texas in order to negotiate or perform any portion of the agreement. Finally, Little Swamp argues the parties' obligations under the agreement were in no way connected to Texas in that Little Swamp was obligated to furnish Fogerty's performing services in South Dakota (not Texas), and Rozone was obligated to wire $300,000 to CAA's client trust account in California (not Texas). Thus, any alleged breach of the agreement would have occurred outside of Texas.

Rozone believes this Court has specific personal jurisdiction over Little Swamp, and in support, Rozone points to the following. First, Rozone asserts it performed all of its obligations under the agreement while in Texas.[4] Second, Rozone coordinated all efforts concerning the festival from Texas. Third, several communications occurred between Little Swamp and Rozone while

---

[4] Rozone's obligation under the agreement was to wire money to CAA's account in California. Therefore, although the money was sent from a Texas account, Rozone's obligation under the agreement was actually performed in California, not Texas. *See Ganis Corp. of Cal. v. Jackson*, 822 F.2d 194, 198 (1st Cir. 1987) ("The location of where payments *are to be sent* has been recognized as a material contact in jurisdictional analysis.") (emphasis added).

Rozone was in Texas. Fourth, Dave Rosen, the president of Rozone, was in Texas when he signed the contract on behalf of Rozone, and Little Swamp was aware of this fact, as Rozone's address in Texas is included in the signatory page of the contract. Finally, according to Rozone, Little Swamp initiated contact with Rozone in Texas (through Knaff) by making a new offer (or counter-offer) of $300,000 payable in advance in exchange for Fogerty's live performance at the festival.[5] Rozone contends that these contacts are sufficient to permit the Court to exercise personal jurisdiction over Little Swamp. The Court disagrees.

As the Fifth Circuit has held, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987); *see also, Burger King,* 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Moreover, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983). The contract at issue in this case centered around a concert that was to take place in South Dakota. Little Swamp's obligations under the contract were to be performed in South Dakota, not in Texas. Furthermore, Rozone's main obligation under the contract—the payment of the fee—was to be performed in California rather than Texas, as that is where the payment was to be sent.

---

[5]The Court notes that Knaff (on behalf of Rozone) initially contacted Little Swamp to book Fogerty for the festival, so Rozone's assertion that Little Swamp somehow initiated the contact with Rozone in Texas is somewhat disingenuous.

In its response, Rozone relies in part on *Mississippi Interstate Express, Inc. v. Transpo, Inc.* and *Latshaw v. Johnston* to show this Court has personal jurisdiction over Little Swamp. However, the Court believes these cases are distinguishable from the facts present in this case, and therefore, contrary to Rozone's position, they do not support the exercise of personal jurisdiction over Little Swamp. For example, in *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1011 (5th Cir. 1982), the court held that the non-resident defendant had sufficient contacts with Mississippi to justify that forum's exercise of jurisdiction over it. However, the court found it significant that the defendant in that case was on the "receiving end" of the contractual transaction. *Id.* at 1007 n.2.

> In instances such as these, the resident plaintiff is the party obliged to provide services and/or goods to the nonresident defendant, with the defendant obliged only to pay for the goods/services provided by the plaintiff. Different due process considerations may be applicable in the converse situation, i.e., where the resident plaintiff is on the "receiving end" of a contract requiring a nonresident defendant to provide the goods/services. In such instances, the plaintiff might be required to show other factors to prove that the defendant "purposefully availed" itself of the forum, such as by delivery of the goods in the forum by the defendant, negotiation or execution of the agreement in the forum, etc.

*Id.* Here, Little Swamp was the party obliged to provide the services to Rozone, and Rozone was on the receiving end of the contract. Importantly, Little Swamp did not deliver any goods or services into the forum, nor was it contemplated by the agreement that it would be required to, as Fogerty was contracted to perform in South Dakota, not Texas. Additionally, the negotiations of the agreement did not occur in Texas—these negotiations occurred while CAA and Little Swamp were in California and Knaff was in Nevada.[6]

---

[6]Rozone, relying on *Security Homestead Association v. International Insurance Co.*, No. 89-4020, 1990 WL 81462, at *3 (E.D. La. June 4, 1990) and *Ganis Corp. of California v. Jackson*, 822 F.2d 194 (1st Cir. 1987), argues that "Knaff's participation was merely that of an intermediary,

As was the case in *Mississippi Interstate Express*, the *Latshaw* court also held it could exercise personal jurisdiction over a non-resident defendant. *Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1999). In doing so, the court specifically contrasted the facts in that case from those present in *Hydrokinetics*:

> In *Hydrokinetics*, the defendant had no more than a fortuitous connection to Texas related to a single transaction, initiated by the Texas plaintiff, and carried out in large part outside the Texas state boundaries. Johnston, by contrast, was much more than a one-shot purchaser of Texas goods whose only connection with the state grew out of a Texas manufacturer's marketing efforts. Rather, according to Latshaw's complaint and affidavit, Johnston entered into an ongoing business relationship with a Texas resident (and his company) and made multiple trips and phone calls to Texas in furtherance of that relationship.

*Id.*

Plainly, the facts of this case are more analogous to those present in *Hydrokinetics* than in *Latshaw*. For instance, Little Swamp had no more than a fortuitous connection to Texas related to a single transaction, the transaction was initiated by a Texas plaintiff, and it was carried out in large part outside of Texas. Additionally, Little Swamp did not have an ongoing business relationship with Rozone, nor did Little Swamp make several trips to Texas in furtherance of their relationship. Also important to the *Latshaw* decision was the fact that the defendant had purposefully availed

---

which does not preclude the exercise of personal jurisdiction over Little Swamp" in Texas. Pl. Response, Clerk's Doc. No. 32, at 7. In other words, Rozone apparently believes that because Knaff was acting as an intermediary, the Court should treat it as if Knaff acted from Texas since he was working for Rozone who was located in Texas. However, the Court believes Rozone is somewhat mistaken on this point. Knaff was Rozone's intermediary, and Knaff reached into California on behalf of Rozone to solicit an agreement with Little Swamp. Both *Security Homestead* and *Ganis* involved situations in which an intermediary acted on behalf of a defendant who reached out to a plaintiff in the forum state. The courts in those cases held that the defendants, through their intermediaries, "voluntarily interjected" themselves into a transaction with a resident of the forum state. Thus, had Rozone been sued in California, Rozone would not be able to hide behind the fact that it never actually reached into California because Knaff was merely an intermediary for Rozone.

himself of the benefits and protections of Texas law by previously hiring a Houston law firm and threatening to seek an injunction against the plaintiff. *Latshaw*, 167 F.3d at 212. In this case, there is little to suggest that Little Swamp purposefully availed itself of the benefits and protections of Texas law when it contracted with a Texas resident to provide the services of Fogerty for a concert in South Dakota.

In sum, the Court does not believe that Rozone has met its burden in making a *prima facie* showing that this Court has specific personal jurisdiction over Little Swamp. Based upon the arguments presented to the Court, it cannot be said that Little Swamp had the requisite minimum contacts with Texas necessary to invoke this Court's jurisdiction. Accordingly, the Court will recommend that Little Swamp's motion to dismiss for lack of personal jurisdiction be granted.[7]

## V. RECOMMENDATION

Based on the above, the Magistrate Judge **RECOMMENDS** that the District Judge **GRANT** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Clerk's Doc. No. 6). The Magistrate Judge **FURTHER RECOMMENDS** that the District Judge **DENY AS MOOT** Defendant's Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue (Clerk's Doc. No. 7), and Defendant's Motion to Compel Arbitration and Dismiss Action (Clerk's Doc. No. 8). **FINALLY**, The Magistrate Judge **RECOMMENDS** that the District Judge **DISMISS** this action **WITHOUT PREJUDICE** in its entirety and deny all relief not expressly granted in this Order.

---

[7]Given the Court's finding that insufficient minimum contacts exist to exercise specific jurisdiction over Little Swamp, the Court need not consider whether such jurisdiction would violate traditional notions of fair play and substantial justice. *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 314–15 (5th Cir. 2007).

## VII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

The Clerk is directed to mail a copy of the instant recommendation to all parties by certified mail, return receipt requested.

SIGNED this 3rd day of April, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE